

**TraPac**
Los Angeles • Oakland • Jacksonville • Austin

February 23, 2012

F I L E D
JACKSONVILLE, FLORIDA

FEB 2 8 2012

CLERK, U. S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

Lee Ann Bennett, Clerk
U.S. Bankruptcy Court
300 North Hogan Street, Suite 3-350
Jacksonville, FL 32202

**Subject:  Bankrupcy Case # 3:12-BK-00323-JAF**

Dear Ms. Bennett:

This letter serves as notice of objection regarding Item 4. of the proposed Chapter 13 Plan regarding Bryon Young and Valerie Young.

TraPac, Inc. is the plan sponsor of the TraPac 401(k) Plan. The proposed payment plan violates 401(k) loan policy. The loan policy excerpts that reference payment terms are provided herein. A full copy of the TraPac 401(k) Loan Policy is attached.

> 3. Evidence and Terms of Loan
> "The loan must provide at least quarterly payments under a level amortization schedule. If the Participant is currently employed by the Employer, the Plan Administrator will require the Participant receiving a loan from the Plan to enter into a payroll deduction agreement to repay the loan."

> 10. Default
> "The Plan Administrator will treat a loan as in default if: any scheduled payment remains unpaid beyond 58 days after each due date (but in no event may the grace period extend beyond the end of the calendar quarter following the calendar quarter in which the Participant missed the scheduled payment.)"

Based on the proposed payment plan, failure to pay within the prescribed time frame will result in loan default. Please present this information at the Confirmation Hearing.

If you have questions, please contact me at 310-513-7416.

Sincerely,

Elena C. Salvatore
Manager, Human Resources

Attachment

*TraPac, Inc.*
*920 W. Harry Bridges Blvd. • Wilmington, California 90744-5230*
*P.O. Box 1178 • Wilmington, California 90748-1178*
*(310) 830-2000 • FAX (310) 513-7410*

**Participant Loan Policy**

## TRAPAC 401(K) PLAN

## PARTICIPANT LOAN POLICY

TraPac 401(k) Plan permits loans to be made to Participants, but not to Participants whose employment has terminated or who are Beneficiaries or an alternate payee under a Qualified Domestic Relations Order (QDRO), pursuant to a written loan policy. All references to Participants in this loan policy include Participants with respect to the Plan who are not Beneficiaries or an alternate payee under a Qualified Domestic Relations Order (QDRO), provided that the borrower must qualify as a "party in interest" as defined by ERISA Section 3(14), but not Participants whose employment has terminated. All current employees of the Employer and certain former Employees qualify as parties in interest.

The Plan Administrator is authorized to administer the Participant loan policy. A Participant must apply to the Plan Administrator for a loan in the manner set forth by the Plan Administrator.

1. LOAN APPLICATION/BORROWER QUALIFICATION. Any Participant may apply for a loan from the Plan.

All loan applications will be considered by the Plan Administrator within a reasonable time after the Participant makes formal application in accordance with elections made by the Plan Sponsor in the Administrative Services Agreement between the Plan Sponsor and the service provider ("Prudential") as follows:

If the Loan Initiation Outsourcing Service has been selected, a Participant may apply for a loan by submitting a loan application ("Application"), in a form prescribed by Prudential and consistent with the terms of this Loan Policy as authorized by the Plan Administrator, to Prudential by authorized electronic means. The date and time of receipt will be appropriately recorded.

If the Participant Transaction Center (PTC) Loan Service has been selected, a Participant may apply for a loan by submitting a loan application ("Application"), in a form prescribed by Prudential and consistent with the terms of this Loan Policy as authorized by the Plan Administrator, to Prudential by authorized electronic means. The request will be reviewed and approved and/or denied by an authorized representative of the Employer by electronic means. The date and time of receipt will be appropriately recorded.

If the Non-Automated Loan Service has been selected, a Participant may apply for a loan by submitting a duly completed loan application ("Application") to the Plan Administrator or authorized plan representative that has been signed by the Participant, within the 90-day period prior to the making of the loan. If spousal consent is required, the application must be signed by the spouse and witnessed by a notary public or an authorized plan representative. An authorized plan representative must approve the loan.

The Plan Administrator will not investigate the Participant's creditworthiness before making the loan as the loan will be treated as a directed investment of the borrower's Account.

An Employee may not make and the Plan will not accept a Direct Rollover of a loan note from the qualified plan of a Participant's former employer.

Please refer to the Administrative Services Agreement for applicable loan initiation and maintenance fees. The Plan Administrator, as to new loans, may increase these fees by notice to or agreement with the record keeper or other party administering loans and repayments.

2. LOAN LIMITATIONS. The Plan Administrator will not approve any loan to a Participant in an amount which exceeds 50% of his or her nonforfeitable account balance. The maximum aggregate dollar amount of loans outstanding to any Participant may not exceed $50,000, reduced by the excess of the Participant's highest outstanding Participant loan balance during the 12-month period ending on the date of the loan over the Participant's current outstanding Participant loan balance on the date of the loan. With regard to any loan made pursuant to this program, the following rule(s) and limitation(s) will apply, in addition to such other requirements set forth in the Plan:

- No loan in an amount less than $1,000 will be granted to any Participant.

- A Participant can only have one (1) loan(s) currently outstanding from the Plan.

- Loan refinancing is permitted. A Participant may refinance to renegotiate the terms of the loan and/or to borrow additional dollars. Under this option, additional dollars may be borrowed and the term of the loan may not be extended past the original due date of the loan being replaced; however, if the original term of the loan was for less than five years, the replacement loan could extend the term to five years from the original issuance date. The replacement loan will not violate the one outstanding loan requirement to the extent such loan is a new loan.

- Loans will be permitted for the purchase of a primary residence.

- Loans will be made from the following accounts in the following order:

Such accounts as the Plan Administrator determines.

3. EVIDENCE AND TERMS OF LOAN. The Plan Administrator will document every loan in the form of a promissory note signed by the Participant for the face amount of the loan, together with a commercially reasonable rate of interest.

The interest rate will be set by reference to the "bank prime rate." In accordance with the Plan Sponsor's direction in the Plan Criteria Guidelines submitted to Prudential, Prudential will make any necessary rate changes based upon the "bank prime rate" plus 2% reported by the U.S. Federal Reserve on the last business day of a calendar quarter effective for loans made on and after the first business day of the subsequent quarter. The source for the rate will be www.federalreserve.gov or other websites that may provide the same information.

    i. The interest rate on Participant loans will be declared quarterly; however, the Plan reserves the right to change the basis for determining the interest rate prospectively with thirty (30) days notice.

    ii. These rights will only apply to a loan issued after the change(s) takes effect.

The loan must provide at least quarterly payments under a level amortization schedule. If the Participant is currently employed by the Employer, the Plan Administrator will require the Participant receiving a loan from the Plan to enter into a payroll deduction agreement to repay the loan.

The Plan Administrator will fix the term for repayment of any loan, however, in no instance may the term of repayment be greater than five years, unless the loan qualifies as a home loan. A "home loan" is a loan used to acquire a dwelling unit which, within a reasonable time, the Participant will use as a principal residence. The maximum term for a home loan will be 30 years.

All loans will be considered a directed investment from the account(s) of the Participant maintained under the Plan. As such, all payments of principal and interest made by the Participant will be credited only to the account(s) of such Participant.

The Plan will charge that portion of the Participant's account balances with expenses directly related to the loan set-up, annual maintenance, administrative charges, and collection of the note. See the Administrative Services Agreement for more details.

A Participant may not request a Direct Rollover of a loan note to another qualified plan.

If the balance of the loan is not paid, the remaining balance will be offset against the participant's account upon the earlier of distribution of the account to the Participant or expiration of the grace period.

Participants should note the law treats the amount of any loan (other than a "home loan") not repaid five years after the date of the loan as a taxable distribution on the last day of the five year period or, if sooner, at the time the loan is in default. If a Participant extends a non-home loan having a five year or less repayment term beyond five years, the balance of the loan at the time of the extension is a taxable distribution to the Participant.

Loans may be paid in full at any time without penalty. Participants may contact the record keeper in order to obtain a payoff quote that is valid for 14 business days.

Partial prepayments of principal only will not change the amount or timing of subsequent payments due prior to pay-off of the loan, but will simply reduce the total number of payments to be made. In order to be processed as a prepayment of principal only, the Participant or Plan Administrator must notify Prudential that the payment needs to be processed as a principal only payment, and the amount should be sent as a separate payment, not with payments made in accordance with the amortization schedule. Unless otherwise directed by the Participant or an authorized representative of the Employer as of the trade date of receipt, payments made as required by the loan amortization schedule will be allocated to principal and interest in accordance with the amortization schedule.

4. SECURITY FOR LOAN. The Plan will require that adequate security be provided by the Participant before a loan is granted. For this purpose, the Plan will consider a Participant's interest under the Plan (account balance) to be adequate security. However, in no event will more than 50% of a Participant's vested interest in the Plan (determined immediately after origination of the loan) be used as security for the loan. Generally, it will be the policy of the Plan not to make loans which require security other than the Participant's vested interest in the Plan. However, if additional security is necessary to adequately secure the loan, then the Plan Administrator will require that such security be provided before the loan will be granted.

5. SPOUSAL CONSENT. This plan is subject to the Qualified Joint and Survivor Annuity requirements. A Participant may not use his/her account balance as security for a loan unless the Participant's spouse, if any, consents to the use of such account balance as security for the loan; however, such consent will not be required if the Participant's total vested account balance does not exceed the threshold identified in the Plan.

6. FORM OF PLEDGE. The pledge and assignment of a Participant's account balances will be in the form prescribed by the Plan Administrator.

Participant Loan Policy

7. **MILITARY SERVICE.** If a Participant separates from service (or takes a leave of absence) from the Employer because of service in the military and does not receive a distribution of his or her account balances, the Plan will suspend loan repayments until the Participant's completion of military service. The Employer will provide the Participant with a written explanation of the effect of the Participant's military service upon his or her Plan loan. While the Participant is on active duty in the United States military, the interest rate on the loan will not exceed six percent (6%), compounded annually.

8. **LEAVE OF ABSENCE/SUSPENSION OF PAYMENT.** The Plan Administrator will suspend loan repayments for a period not exceeding one year which occurs during an approved leave of absence, either without pay from the Employer or at a rate of pay (after applicable employment tax withholdings) that is less than the amount of the installment payments required under the terms of the loan. The Plan Administrator will provide the Participant with a written explanation of the effect of the leave of absence upon his or her Plan loan.

9. **PAYMENTS AFTER LEAVE OF ABSENCE.** When payments resume following a payment suspension in connection with a leave of absence authorized above, the Participant will select one of the following methods to repay the loan, plus accumulated interest:

    - The Participant will increase the amount of the required installments to an amount sufficient to amortize the remaining balance of the loan, plus accrued interest, over the remaining term of the loan.

    - The Participant will pay a balloon payment of the remaining unpaid principal and interest, at the conclusion of the term of the loan as determined in the promissory note.

    - The Participant may extend the maturity of the loan and re-amortize the payments over the remaining term of the loan. In no event will the amount of the adjusted installment payment be less than the amount of the installment payment provided under the promissory note. In the case of a non-military leave of absence, the revised term of the loan will not exceed the maximum term permitted under item 3 above. In the case of a military leave of absence, the revised term of the loan will not exceed the maximum term permitted under item 3 above, augmented by the time the Participant was actually in United States military service.

10. **DEFAULT.** The Plan Administrator will treat a loan as in default if:

    - any scheduled payment remains unpaid beyond 58 days after each due date (but in no event may the grace period extend beyond the end of the calendar quarter following the calendar quarter in which the Participant missed the scheduled payment).

Upon default, the Participant will have the opportunity to repay the loan, resume current status of the loan by paying any missed payment plus interest or, if distribution is available under the Plan, request distribution of the note. If the loan remains in default, the Plan Administrator will offset the Participant's vested account balances by the outstanding balance of the loan to the extent permitted by law. The Plan Administrator will treat the note as repaid to the extent of any permissible offset. Pending final disposition of the note, the Participant remains obligated for any unpaid principal and accrued interest.

If the Participant is currently in default on a loan from this Plan or any other plan of the Employer, the Participant may not have an additional loan from this Plan.

Adopted this ___19th___ day of ___March___, 20_10_. This loan policy may be amended from time to time.

_____
Plan Administrator
Elena C. Salvatore, Manager Human Resources

FORM B9I (Chapter 13 Case) (12/10)                                Case Number 3:12-bk-00323-JAF

## UNITED STATES BANKRUPTCY COURT
### Middle District of Florida

## Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines

The debtor(s) listed below filed a chapter 13 bankruptcy case on 1/20/12.

You may be a creditor of the debtor. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below. NOTE: The staff of the bankruptcy clerk's office cannot give legal advice.

### See Reverse Side For Important Explanations

Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):

| | |
|---|---|
| Bryon Andrew Young<br>563 Saddlestone Dr.<br>Jacksonville, FL 32259 | Valerie Lynn Young<br>563 Saddlestone Dr.<br>Jacksonville, FL 32259 |
| Case Number:<br>3:12-bk-00323-JAF | Social Security/Taxpayer ID/Employer ID/Other Nos.:<br>-7574<br>-2513 |
| Attorney for Debtor(s) (name and address):<br>Charles E. Fyler II<br>Apple Law Firm PLLC<br>3733 University Boulevard West<br>Suite 212B<br>Jacksonville, FL 32217<br>Telephone number: 904-685-1200 | Bankruptcy Trustee (name and address):<br>Douglas W. Neway<br>P O Box 4308<br>Jacksonville, FL 32201<br>Telephone number: 904-358-6465 |

### Meeting of Creditors
Debtor(s) must present Photo ID and acceptable proof of Social Security Number at § 341 meeting.
You are reminded that Local Rule 5073-1 restricts the entry of cellular telephones and computers into the Courthouse.

Date: **February 27, 2012**          Time: **11:00 AM**
Location: **FIRST FLOOR, 300 North Hogan St. Suite 1-200, Jacksonville, FL 32202**

### Deadlines:
Papers must be *received* by the bankruptcy clerk's office by the following deadlines:

**Deadline to File a Proof of Claim:**

For all creditors (except a governmental unit): **5/29/12**     For a governmental unit (except as otherwise provided in Fed. R. Bankr. P. 3002 (c)(1)): **180 days from the date of filing**

**Creditor with a Foreign Address**
A creditor to whom this notice is sent at a foreign address should read the information under "Claims" on the reverse side.

**Deadline to File a Complaint to Challenge Dischargeability of Certain Debts: 4/27/12**

### Deadline to Object to Exemptions:
Thirty (30) days after the *conclusion* of the meeting of creditors.

### Filing of Plan, Hearing on Confirmation of Plan
The plan or a summary of the plan will be sent separately. The hearing on confirmation will be held:
Date: **4/10/12**, Time: **01:30 PM**, Location: **300 North Hogan Street, 4th Floor – Courtroom 4D, Jacksonville, FL 32202**

1. All exhibits must be pre-marked and listed in accordance with Local Rule 9070-1. 2. The hearing may be continued upon announcement made in open court without further notice. 3. Any party opposing the relief sought at this hearing must appear at the hearing or any objections or defenses may be deemed waived. 4. You are reminded that Local Rule 5072-1(b)(16) requires that all persons appearing in court should *dress in business attire*. 5. Secured Creditors are advised that the payment amount, frequency of payments and valuation of collateral as described in the debtor(s)plan will become effective with the Confirmation Order unless the affected secured creditor files an objection. Such objection must be filed with the Clerk, U.S. Bankruptcy Court, 300 North Hogan Street Suite 3-350, Jacksonville, Florida, 32202, and will be heard at the Confirmation Hearing.

### Creditors May Not Take Certain Actions:
In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor, the debtor's property, and certain codebtors. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

| | |
|---|---|
| Address of the Bankruptcy Clerk's Office:<br>300 North Hogan Street Suite 3-350<br>Jacksonville, FL 32202<br>Telephone number: 904-301-6490 | **For the Court:**<br>Clerk of the Bankruptcy Court:<br>Lee Ann Bennett |
| Hours Open: Monday – Friday 8:30 AM – 4:00 PM | Date: 1/23/12 |